UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**HEATHER K. BALL,**

        **Plaintiff,**        **CIVIL ACTION NO. 12-cv-12769**

  **vs.**

                           **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Heather Ball seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 19). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 15) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 19) be GRANTED.

**II.    PROCEDURAL HISTORY:**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income with protective filing dates of April 15, 2008, alleging that she had been disabled since July 26, 2007, due to various mental and physical ailments. (*See* TR 20, 22.) The Social Security Administration denied benefits. (*See* TR 20.) Plaintiff requested a *de novo* hearing, which was held on November 23, 2010, before Administrative Law Judge (ALJ) Thomas L. Walters, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 30-31.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's Testimony

Plaintiff was 36 years old at the time of the administrative hearing and 33 years old at the time of alleged onset. (*See* TR 59.) At the time of the hearing, Plaintiff lived with a friend but "it[ was] just temporarily." (TR 59.) She was unmarried, and she had three children, one of whom was 20 years old and two of whom were under the age of 18. (TR 60.) Plaintiff had a ninth-grade education (which included special-education classes) and prior work experience as a waitress, a hotel cleaning lady, a certified nurse assistant, a baker, and a welder. (TR 59-61, 62.) At the time of the hearing, she had no job, but she was receiving aid from the State of Michigan. (TR 60.) Plaintiff had a driver's license, but she rarely drove due to her anxiety. (TR 69.)

Plaintiff testified that she stopped working in 2007 due to injuries caused by a car accident. (TR 62.) She told the ALJ that she could not work because "I'm physically and mentally kind of screwed up right now." (TR 67.) She indicated that during the accident, she suffered a broken hip

and eight broken ribs; she told the ALJ that she had hip replacement surgery, stitches and staples in her back, and a rod placed through her knee. (TR 62.) Plaintiff testified that she never fully recovered from the accident and that she had "lots of pain and . . . edema really bad in [her] legs." (TR 63.) She stated that the pain in her knee was an eight-and-a-half on a ten-point scale, the pain in her hip was about a seven, and the pain in her foot was about a five or a six, all while taking her medication. (TR 63-64.) Plaintiff further testified that she had problems with memory and concentration, that her mood went "back and forth," and that she suffered from nightmares and depression. (TR 66.) She also added that she suffered from acid reflux and asthma. (TR 67, 68.)

Plaintiff testified that at the time of the hearing, she was taking Vicodin for her pain, Ativan for her anxiety, Celexa for her bipolar disorder, and Prilosec for her acid reflux; she was also using a breathing machine and an inhaler to control her asthma. (TR 67-68.) Plaintiff indicated that she did not suffer from any side effects caused by her medications. (TR 68.) Plaintiff also received in-home physical therapy services. (TR 64.)

Plaintiff testified that she could walk about a block and a half before her pain and asthma would require her to sit down. (TR 65.) She could stand for about 15 minutes before she would have to sit down, and she could sit for about a half hour before she would have to lie down; she added that she had to lie down for about five hours every day. (TR 65-66.) Plaintiff also testified that she could lift about five pounds. (TR 65.)

Plaintiff indicated that her average day was "miserable," and that she just did "the best [she could]" to get through the day. (TR 66.) She testified that her friends helped her mow her lawn and take care of her home by vacuuming, cooking, and cleaning. (TR 66-67.) Plaintiff added that she could handle "simple cooking." (TR 67.)

  **B.**  **Medical Record**

Defendant asserts that "[t]he ALJ provided a full discussion of the relevant evidence in this case" and does not set forth a factual account contrary to that which is presented by Plaintiff. (Docket no. 19 at 8.) The ALJ, however, did not cite to every piece of evidence in the record.[1] Therefore, because Defendant does not challenge Plaintiff's account of the record, the Court hereby incorporates by reference the medical record as set forth in the ALJ's opinion and in Plaintiff's brief in support of her Motion. (TR 22-26, 28-29; Docket no. 15 at 7-14.) The Court has reviewed Plaintiff's medical records in full and will incorporate comments and citations as necessary throughout this Report and Recommendation.

### C. The Vocational Expert

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and vocational experience who was limited to sedentary, unskilled work. (TR 70-71.) The ALJ then asked the VE to assume that this individual would have to work in a clean air environment, could maintain no prolonged walking beyond two blocks, could not work around moving machinery or unprotected heights, and could not deal with the public. (TR 71.) The ALJ then asked the VE if, "[b]ased on those limitations[, there would] be any unskilled sedentary jobs." (TR 71.) The VE testified that such a person could work as a surveillance monitor (1,200 jobs in the region); in a clerical job, "like a clerical or a bookkeeping clerk" (7,000 jobs in the region); or as a hand packager (640 jobs in the region). (TR 71.)

The ALJ then asked if someone with all of claimant's alleged impairments could work on a full-time basis. (TR 71.) The VE testified that she could not, because Plaintiff alleges hip pain,

---

[1] "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *see also Walker v. Sec't of HHS*, 884 F.2d 241, 245 (6th Cir. 1989).

right knee pain, and foot pain with the need to lie down for five hours a day. (TR 71.) The VE testified that this, coupled with short-term memory problems and mood swings, would be work preclusive. (TR 71-72.) The VE also acknowledged that if Plaintiff had to miss three days a month due to her various impairments, she would be precluded from all sedentary unskilled jobs. (TR 72.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 26, 2007, and that she suffered from the following severe impairments: fracture of the pelvis, fracture of the right foot, right knee pain, anxiety, Barrett's esophagus, and asthma. (TR 22.) The ALJ further found that her impairments did not meet or equal those listed in the Listing of Impairments. (TR 26-27.) The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible, and he afforded "limited weight" to the opinions of Plaintiff's treating physicians, Drs. Lepley and Pfalzer. (TR 29.) Thus, the ALJ found that Plaintiff retained the residual function capacity to perform "unskilled sedentary work . . . except [Plaintiff could not] walk[] greater than two blocks; [] work around moving machinery or at unprotected heights; [perform] work requiring contact with the public; [or perform] work in a [non-]clean-air environment." (TR 28.) The ALJ then determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 31.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from July 26, 2007, through the date of the ALJ's decision. (TR 31.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether

5

his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

    (4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.**    **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a

sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded under sentence 4 for the following reasons: (1) the ALJ erred when he found that Plaintiff's testimony lacked credibility because the ALJ did not consider the entire record; (2) the ALJ erred when he failed to give controlling weight to Plaintiff's treating physician's opinion; (3) the VE's testimony was deficient because the ALJ did not include all of Plaintiff's limitations in his hypothetical questions to the VE; and (4) the ALJ's Step-5 finding is not supported by substantial evidence because the VE did not provide DOT numbers for the cited jobs, and moreover, the jobs cited by the VE appear to be semi-skilled positions, which conflict with the ALJ's limitation to unskilled work. (*See* docket no. 15.)

### 1. **Plaintiff's Credibility**

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff contends that in determining Plaintiff's credibility, the ALJ improperly relied on activities reports filled out by Plaintiff in May 2008. (Docket no. 15 at 16.) Plaintiff argues that an activity report filled out by her home healthcare nurse, Karen Cooper, on June 4, 2009, is more accurate and is consistent with her allegations, but Plaintiff claims, "the ALJ never mentioned this evaluation." (*Id.* at 17.) Plaintiff asserts that "[i]t was improper for the ALJ to base his credibility finding on statements more than two years prior to the [hearing] without considering and/or noting the significant medical events and records that occurred after the [May 2008] reports [were completed]." (*Id.* at 18.) Defendant argues that the ALJ was required to consider Plaintiff's reports because "Plaintiff stated that she could perform these activities during the time period in which she claims she was disabled." (Docket no. 19 at 18.) Moreover, Defendant contends, "the ALJ did not summarily reject Plaintiff's credibility solely because of her daily activities;" he also considered the objective medical evidence, including "Plaintiff's failure to comply with doctor's

9

recommendations." (*Id.* at 16-19.)

In making his finding of severe impairments at Step 2, the ALJ discussed Plaintiff's medical record in significant detail. (*See* TR 22-26.) He noted that Plaintiff's first visit to the emergency room occurred on July 26, 2007, when Plaintiff presented with "right foot pain after tripping and falling." (TR 22.) He explained that Plaintiff was given pain medication and prescribed crutches, but less than a month later, Plaintiff's doctor noted that Plaintiff "had been walking excessively on the cast and she was not following instructions to limit her ambulation." (TR 23.) Plaintiff's doctor told her to stay off of her foot and that "noncompliance could lead to further displacement of the fracture and might lead to possible surgery," but Plaintiff still failed to get crutches or stay off of her foot. (TR 23.) Plaintiff's doctor opined that Plaintiff "had pain associated with continued noncompliance and against medical advice. (TR 23.)

The ALJ continued his review of Plaintiff's medical record, and he noted that following her November 2007 accident, she returned to the emergency room with "increasing right sided hip pain after attempting to walk." (TR 23.) Her doctor noted that "she had been advised not to walk on her right leg for three months after her surgery, which had been only three weeks earlier." (TR 23.) The ALJ also noted that while Plaintiff had shortness of breath, she stated that she was not using her prescribed Albuterol inhaler, and through at least July 28, 2008, Plaintiff "reported she smoked a pack of cigarettes each day." (TR 23, 24.)

After completing his Step-2 and Step-3 analyses, the ALJ turned to Plaintiff's RFC. He first considered Plaintiff's testimony and her asserted limitations therein. (TR 27.) He then found that Plaintiff's statements regarding the extent of her symptoms were not fully credible. (TR 28.) In support of that finding, the ALJ first noted, as Plaintiff asserts, that Plaintiff's "described daily activities[ (as discussed in her May 2008 reports) were] not limited to the extent one would expect,

10

given her complaints of disabling symptoms and limitations." (TR 28.) But the ALJ's analysis did not stop there; the ALJ continued by discussing Plaintiff's noncompliance with her doctors' recommended treatment, finding that such noncompliance "suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application" where she otherwise had no postoperative complications. (TR 28.) The ALJ then continued by analyzing the objective medical evidence, finding that Plaintiff's hip fracture "appeared to have healed," she was walking "without assistance and her pain did not appear to be significantly affecting her activities of daily living," she "requested a release to return to work," and while she had been diagnosed with asthma, she had a long history of smoking cigarettes "despite being advised to cease smoking." (TR 29.)

The ALJ did not discuss Nurse Cooper's June 4, 2009 assessment, but as noted, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *see also Walker v. Sec't of HHS*, 884 F.2d 241, 245 (6th Cir. 1989). Here, the ALJ's rationale is sufficiently specific to make clear to Plaintiff and the Court the weight he gave to Plaintiff's statements and the reasons for that weight. Moreover, the ALJ did not base his decision solely on a lack of objective evidence substantiating Plaintiff's claims; to the contrary, the ALJ supported his decision with substantial evidence in the case record. Therefore, while substantial evidence may also support an opposing conclusion, the Court recommends denying Plaintiff's Motion with regard to this issue.

### 2.     Weight of the Medical Opinions

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue

of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that

the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

The Sixth Circuit, however, has upheld the decision of an ALJ to give less than controlling weight to a treating physician's opinion without specifically analyzing the opinion under the factors set forth in 20 C.F.R. § 404.1527 if the ALJ provides "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008). That is, there is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527. *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)). "An opinion may be patently deficient if the treating source offers no explanation to support it." *Fleming v. Comm'r*, No. 10-25, 2011 WL 3049146 at *9 (E.D. Tenn. July 5, 2011) (citing *May v. Astrue*, 09-00090, 2009 WL 4716033 at *8 (S.D. Ohio Dec. 9, 2009) (finding a treating source opinion patently deficient where the treating source simply checked boxes about the plaintiff's alleged disability and failed to provide supporting explanations or objective evidence.")).

Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Raghad Lepley, M.D., Plaintiff's treating physician, when he afforded Dr. Lepley's opinion "limited weight." (Docket no. 15 at 19-21.) Plaintiff asserts that the ALJ further erred when he failed to consider Nurse Cooper's opinion regarding Plaintiff's "lack of/or inability to concentrate." (*Id.* at 20.) Plaintiff contends that

13

the ALJ, instead of properly affording these opinions controlling weight, "substituted these medical opinions with his own opinion." (*Id.* at 20-21.) Defendant asserts that Dr. Lepley's opinions are not supported by any clinical or diagnostic testing or by any objective examination results; moreover, Defendant contends, "the ALJ identified several medical records that fail to support Dr. Lepley's . . . opinion." (Docket no. 19 at 12.) With regard to Nurse Cooper, Defendant argues that the ALJ was not required to afford her opinion any weight because she is not an acceptable medical source under 20 C.F.R. § 404.1502, and therefore, her opinion is not a medical opinion. (*Id.* at 14.)

Defendant is correct with regard to Nurse Cooper. The Act does not acknowledge a registered nurse as an acceptable medical source, and therefore, the ALJ did not err in failing to consider her opinion with regard to Plaintiff's RFC. Thus, the Court will confine the instant analysis to the ALJ's determination that Dr. Lepley's opinion was only entitled to "limited weight."

After discussing the evidence that contradicted Plaintiff's subjective complaints and finding Plaintiff's statements not wholly credible, the ALJ noted that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (TR 29.) The ALJ specifically acknowledged Dr. Lepley's June 2010 assessment, wherein Dr. Lepley determined that Plaintiff had "reduced range of motion, joint instability, impaired sleep, abnormal posture, tenderness, muscle spasm," and "muscle weakness," as well as marked limitation in the ability to deal with work stress. (*See* TR 29; docket no. 15 at 19-20 (citing TR 492-95).) The ALJ then noted, however, that Dr. Lepley's treatment records were "very brief, sporadic, and a majority of the visits contain requests for medication refills." (TR 29.) Therefore, the ALJ determined, Dr. Lepley's treatment notes did not support his opinion to the extent that the opinion was entitled to controlling weight. (TR 29.)

Plaintiff acknowledges that Dr. Lepley's notes are brief, but she argues that Nurse Cooper's

opinion and the opinion of Dr. David Weiss, Plaintiff's orthopaedic surgeon, should be viewed as support for Dr. Lepley's conclusions because Dr. Lepley (as a treating source) referred Plaintiff to these individuals; that is, Dr. Lepley "was the 'quarterback' of [Plaintiff's] treatment and would have been aware of her medical and mental impairments." (Docket no. 15 at 19.) Plaintiff, however, provides no legal support for this theory. Moreover, Defendant points to evidence from Dr. Weiss and a state consultative examiner, Dr. Mary Wood, that does not support Dr. Lepley's opinion. (*See* docket no. 19 at 12-13.) And while Defendant is not permitted to engage in post-hoc rationalization for the ALJ's decision, *see Hunter v. Astrue*, No. 1:09 CV 2790, 2011 WL 6440762, at *4 (N.D. Ohio Dec. 20, 2011) (citing *S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947)), such is not the case here. While the ALJ did not re-address the evidence in question during his Step-4 analysis, it does appear that the ALJ considered Nurse Cooper's report and Dr. Weiss's reports as part of his Step-2 analysis. (*See* TR 23-24.) And when reaching his Step-4 decision regarding Dr. Lepley's opinion, he merely relied on his earlier analysis. Thus, while the ALJ did not specifically address the factors set forth in 20 C.F.R. § 404.1527, the ALJ provided good reason for his decision, and the Court, therefore, recommends denying Plaintiff's Motion with regard to this issue.

### 3. The ALJ's Hypothetical Questions

Plaintiff argues that the ALJ erred when he failed to include in his hypothetical questions to the VE any limitations regarding Plaintiff's ability to maintain concentration or respond appropriately to changes in the work setting, as set forth in an opinion authored by state-agency consultant Dennis Bashara. (Docket no. 15 at 21.) Plaintiff is correct in her assertion that the ALJ did not include such limitations in his questions to the VE. But the ALJ did not include such limitations in her RFC. And in a hypothetical question posed to the VE, an ALJ is required only to incorporate those limitations that he finds credible and supported by the record. *See Casey v. Sec'y*

*of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Dr. Bashara found that Plaintiff was "moderately limited" in these areas (TR 301), and in determining Plaintiff's RFC, the ALJ noted as follows:

> At worst, the records indicate moderate limitation, which are (sic) not severe enough to satisfy required functional criteria. The claimant has never been psychiatrically hospitalized and in July 2008, Dr. Jeter reported the claimant's motor activity and responses were within normal limits; thought content was appropriate, [and] logical and he assigned the claimant a GAF of 58.

(TR 30.) Thus, the ALJ did not include any mental limitations in Plaintiff's RFC, so he did not did not err when he failed to include any such limitations in the hypothetical that he presented to the VE. Therefore, the Court should deny Plaintiff's Motion with regard to this issue.

### 4. The VE's DOT-Related Testimony

SSR 00-4p provides that the adjudicator must resolve a conflict between the DOT and the VE "before relying on the VE . . . evidence." But "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Id.* (quoting Martin v. Comm'r, 170 F. App'x 369, 374 (6th Cir. 2006)).

Here, Plaintiff argues that the VE's failure to provide DOT (Dictionary of Occupational Titles) codes in her testimony is reversible error because one of the jobs listed by the VE ("clerical or bookkeeping clerk") is characterized as "semi-skilled," and the ALJ limited Plaintiff to "unskilled" work. (Docket no. 15 at 22.) Defendant argues that Plaintiff had a full and fair opportunity to cross examine the VE, and her failure to do so does not negate any otherwise reversible error. (Docket no. 19 at 22.) Moreover, Defendant argues, "[e]ven if the ALJ discounted the 'bookkeeping clerk' job, the remaining 1,840 surveillance monitor and hand packager jobs would be a 'significant' number of jobs." (*Id.* at 23 (citing *Hall v. Bowen*, 837 F.2d 272, 273, 275-

16

76 (6th Cir. 1988); *Stewart v. Sullivan*, 904 F.2d 708 (6th Cir. 1990)).)

"[E]ven with the inconsistencies [(alleged herein by Plaintiff)] and the failure to provide the DOT codes, the ALJ was within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT." *Wilson v. Comm'r*, No. 10-13828, 2011 WL2607098, *6 (E.D. Mich. July 1, 2011) (Cohn, J.) (citing *Conn v. Sec'y of HHS*, 51 F.3d 607, 610 (6th Cir. 1995)). The ALJ asked the VE if her testimony had been consistent with the DOT, to which the VE responded, "Consistent with the DOT with the exception of the public based on professional experience." (TR 73.) Plaintiff and her representative then had an opportunity to cross-examine the VE and did so with respect to Plaintiff's potential absences from work. (TR 73.)

Additionally, Plaintiff's argument reads an inclusive limitation into the VE's testimony. The VE testified that "there would be clerical jobs that would be reduced regarding public to 7,000 and that would be *like a clerical or a bookkeeping clerk*." (TR 72 (emphasis added).) The VE did not testify that all 7,000 available jobs would be *as a clerical or bookkeeping clerk*; the VE merely used those positions as examples of "clerical jobs." Thus, without any evidence to the contrary, the ALJ did not err by relying on Plaintiff's testimony. And even assuming, *arguendo*, that all 7,000 clerical jobs should have been excluded by the ALJ, Defendant is correct that the remaining 1,840 jobs provide substantial evidence to support the ALJ's decision. Therefore, the Court should deny Plaintiff's Motion with regard to this issue.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 15) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 19) should be GRANTED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 22, 2013         s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 22, 2013                    s/ Lisa C. Bartlett
                                          Case Manager